NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MARITZA SUAREZ ROSARIO,**

                        **Plaintiff,**

**v.**                                                **Case No. 6:15-cv-1322-Orl-41KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff Martiza Suarez Rosario seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 11, 13, and the parties' Joint Memorandum,[1] Doc. No. 15.

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record.  Doc. No. 14.  Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

## PROCEDURAL HISTORY.

In 2012, Rosario filed an application for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq*. R. 186. She alleged that she became disabled on January 1, 2010.   R. 193.

After the application was denied originally and on reconsideration, Rosario asked for a hearing before an Administrative Law Judge ("ALJ").   R. 115.   An ALJ held a hearing on January 15, 2015.   Rosario, accompanied by a representative, and a vocational expert ("VE") testified at the hearing.   R. 37-58.

After considering the hearing testimony and the evidence in the record, the ALJ found that Rosario was insured under OASDI through March 31, 2014.   The ALJ concluded that Rosario had not engaged in substantial gainful activity since the alleged disability onset date.   R. 22.

The ALJ found that Rosario had the following severe impairments:   sleep apnea; obesity; asthma; hypertension; diabetes mellitus; overactive bladder disorder; and, an affective disorder. The ALJ concluded that these impairments, individually or in combination, did not meet or equal a listed impairment.   *Id.*

After considering the record evidence, the ALJ concluded that Rosario had the residual functional capacity to perform less than light work as follows:

> She should avoid ladders, unprotected heights, and heavy, moving machinery.   The claimant should avoid concentrated dusts, fumes, or gases.   She is limited to occasionally bending, stooping, kneeling, and crouching.   She should avoid squatting and crawling.   The claimant needs a low stress work environment with no production lines and simple tasks.

R. 24.   In reaching this conclusion, the ALJ found that Rosario's reports of functional limitations arising from her impairments were not entirely credible.   R. 28.

2

Based on the RFC assessment, the ALJ concluded that Rosario could not perform her past relevant work as a certified nurses' assistant or small products assembler.   R. 30.   After considering the testimony of the VE, the ALJ found that there were light, unskilled jobs available in the national economy that Rosario could perform.   R. 31.   Therefore, the ALJ concluded that Rosario was not disabled.   R. 32.

Rosario asked for review by the Appeals Council.   R. 11.   On June 17, 2015, the Appeals Council found no reason to review the ALJ's decision.   R. 1-3.

Rosario now seeks review of the final decision of the Commissioner by this Court.   Doc. No. 1.

## JURISDICTION AND STANDARD OF REVIEW.

Rosario having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (citation omitted), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are generally adequately stated in the parties' Joint Memorandum, which statement of facts I incorporate by reference.   Because Rosario's argument primarily focuses on the ALJ's conclusion that she could perform simple tasks, I will limit my summary of the evidence to protect Rosario's privacy to the extent possible.

3

Rosario was born in 1961.   R. 41.   She graduated from high school.   R. 41-42.   She previously worked as a nurse assistant at a nursing home.   She was fired from that job when the number of patients in the facility decreased.   R. 44.

During the ALJ's hearing, Rosario testified that she spent her days sinking into depression. R. 45.   She experienced anxiety and crying spells and she could not be still.   She had thoughts of suicide.   R. 50.

During the day, she could wash dishes, other than pots, and sometimes wash the laundry. R. 45-46.   She went to the grocery store about once a week with her daughter, and she went out to dinner about once a month with her daughter.   R. 46-47.   She attended church occasionally.   She had a driver's license and drove once or twice a week to a local pharmacy.   R. 48.   She could care for her personal hygiene, with assistance from her family.   R. 48-49.

The medical records reflect that Rosario was treated at Family Health Source Medical Centers beginning in 2011.   R. 360-63.   She first reported depression on December 29, 2012 due to personal reasons.   R. 347.   On that date, the treatment provider noted that Rosario's mood was dysthymic, labile and depressed, but her affect was normal.   R. 348.   She was treated with Paxil, which helped but did not entirely relieve her depression.   R. 341.

Ramiro Lanzas-Fuentes, M.D., a consulting physician, observed on January 3, 2013 that Rosario's mental status was sad and she was crying and depressed.   She was oriented to time, space and person but she had short term memory loss.   R. 302.

On January 29, 2013, Vivian A. Loret de Mola-Roy, Ph.D., examined Rosario.   Rosario reported occasional suicidal ideation, frequent crying and a sad mood due to her medical problems and her family and economic problems.   R. 306.   She indicated that she could use the stove and

microwave to cook, and she was able to wash dishes, dust and do light household chores.   She

watched television with her family and socialized with friends and family.   *Id.*   Dr. Mola-Roy

observed that Rosario's mood fluctuated from neutral to dysphoric and tearful throughout the hour-

long examination, and her affect was consistent with her mood.   Rosario's memory processes were

unimpaired, and her judgment, insight and abstract thinking were good.   Dr. Roy concluded that

Rosario had a depressive disorder, NOS, with a global assessment of functioning ("GAF") score of

70.   R. 307.

On January 30, 2013, Robert F. Schilling, Ph.D., prepared a mental health functional

capacity assessment after review of Rosario's records.   He found that Rosario would be moderately

limited in the ability to maintain attention and concentration for extended periods and to complete

a normal workday and workweek without interruptions from psychologically based symptoms.   R.

71.   Rosario would not have any significant limitations in understanding and remembering very

short and simple instructions.   R. 70.   Dr. Schilling concluded that Rosario could do the following:

> The claimant can sustain concentration, persistence and pace for very short
> and simple tasks and be able to maintain attention /concentration for 2-hour
> segments. They can perform activities within a schedule, maintain regular
> attendance, and be punctual within customary tolerances. They have the ability
> to sustain an ordinary routine without special supervision. They maintain the
> ability to work in coordination with or in proximity to others without being
> distracted by them. They can make simple work-related decisions. They will
> experience mild / moderate difficulties maintaining the ability to complete a
> normal workday and workweek without interruptions from psychologically
> based symptoms and to perform at a consistent pace without an unreasonable
> number and length of rest periods.

R. 71.

Rosario began treatment with Sunita Tikku, M.D., a psychiatrist, on March 21, 2013.

Rosario complained of worsening symptoms of depression due to health issues and family

concerns.   R. 313.   Dr. Tikku's assessment was that Rosario suffered from an adjustment disorder with depressed mood, with a current GAF score of 51.   R. 315-16.   She prescribed Depakote.   R. 316.   During a follow-up examination on April 22, 2013, Dr. Tikku observed that Rosario seemed somewhat calmer, but her mood remained depressed and her affect was labile and constricted.   Her attention was maintained, and her reasoning, impulse control, judgment and insight were fair.   R. 317-18.   Dr. Tikku added schizotypal personality disorder to her assessment.   She found that Rosario had a GAF of 53.   R. 318.

On June 11, 2013, Nancy Hinkeldey, Ph.D., prepared a mental functional assessment after review of Rosario's records.   She found that Rosario had moderate difficulties in concentration, persistence or pace.   R. 83.   She concluded that Rosario could do the following:

> The claimant can sustain concentration, persistence and pace for very short and simple tasks and be able to maintain attention /concentration for 2-hour segments. They can perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. They have the ability to sustain an ordinary routine without special supervision. They maintain the ability to work in coordination with or in proximity to others without being distracted by them. They can make simple work-related decisions. They will experience mild / moderate difficulties maintaining the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

R. 89.

On June 20, 2013, Karen Marrero, M.D., a consulting internal medicine physician, examined Rosario.   Rosario reported an earlier suicide attempt, but no date is given.   She denied current suicidal ideation or hallucinations.   R. 369.   Dr. Marrero noted that Rosario cried intermittently, her mood was depressed but her affect was appropriate.   R.

371.   Dr. Marrero recommended a psychological assessment.   She opined that Rosario could perform work-related mental activities two-thirds of the time given simple instructions.   R. 372.

On August 15, 2013, Rosario returned to Dr. Tikku.   She reported that she could not tolerate Depakote.   Dr. Tikku observed that Rosario seemed somewhat calmer.   Her affect was labile and constricted and her mood was depressed.   Her attention was maintained.   Her reasoning, impulse control, judgment and insight were fair.   She had a GAF score of 53.   R. 459-60.   Dr. Tikku discontinued Depakote and prescribed Lamictal. R. 460.

On October 11, 2013, Rosario told Dr. Tikku that she continued to have several stressors on a daily basis and difficulty coping.   Dr. Tikku observed that Rosario's affect was constricted and her mood was anxious.   In other respects her findings were the same as the previous visit.   R. 461-62.   She added Seroquel to Rosario's medication.   R. 464. Later in October, Rosario told her primary care treatment provider that she was not taking medications as prescribed.   R. 387. She made the same report on January 22, 2014.   R. 549.

Dr. Tikku examined Rosario again on March 24, 2014.   Rosario reported that her mood had been fairly stable.   Dr. Tikku observed that Rosario's mood was euthymic and her affect was appropriate.   R. 466.   Dr. Tikku opined that Rosario's GAF score was 55. She continued Rosario on her medication.   R. 467.

7

During the hearing, the ALJ asked the VE to assume a hypothetical person with the age, education and RFC of Rosario.   R. 55-56.   The VE testified that this person could perform the unskilled jobs of car washer, housekeeper and office helper.   R. 56.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Rosario raises two assignments of error. First, she asserts that the ALJ erred by failing to state the weight afforded to the opinion of Dr. Marrero that Rosario could perform work-related mental activities two-thirds of the time given simple instructions.   Second, she contends that the ALJ erred in his credibility determination.   She asks that the final decision of the Commissioner be reversed and that the case be remanded for further proceedings.   These are the only issues I will address.

### *Opinion of Dr. Marrero*.

Rosario asserts that the ALJ erred by failing to state the weight given to Dr. Marrero's opinion that she could perform work-related mental activities only two-thirds of the time given simple instructions.   Counsel for the Commissioner concedes that the ALJ did not state the weight given to this opinion but argues that Rosario's argument "urge[s] an overly exacting standard of judicial review . . . ."   Doc. No. 15, at 19.

In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011), the United States Court of Appeals for the Eleventh Circuit reiterated long standing law in this circuit requiring an ALJ to "state with particularity the weight given to different medical opinions and the reasons therefor."   *Id.* at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'"   *Id.*

8

(quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)); *accord Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 766 (11th Cir. 2014).[2]

In the decision, the ALJ cited to Dr. Marrero's conclusion that Rosario could perform work-related mental activities two-thirds of the time given simple instructions.   R. 29.   He interpreted this finding to mean that Rosario could perform simple tasks, R. 30, but he did not explain why he concluded that she could do so throughout an eight-hour workday.   The failure to address Dr. Marrero's opinion that Rosario could sustain mental activities of work only two-thirds of the time is compounded by the ALJ's decision to give significant weight to the opinions of Dr. Schilling and Dr. Hinkeldey.   Both Dr. Schilling and Dr. Hinkeldey opined that Rosario could sustain attention sufficiently to perform simple tasks only in two-hour periods.   These opinions are further support for the time limitation in Dr. Marrero's opinion.

Counsel for the Commissioner argues that the ALJ concluded that Rosario would not be limited to mental activities of work for limited periods of time if the work was in a low stress environment.   Doc. No. 15, at 23.   This argument is purely conjectural because the ALJ did not state that he accommodated the limited time Rosario could perform simple tasks by including the limitation to a low stress environment in his RFC assessment.   A reviewing court may not accept appellate counsel's *post hoc* rationalizations for an agency's actions.   Rather, "[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's order."   *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974)).

---

[2] Unpublished decisions of the Eleventh Circuit are cited herein as persuasive authority.

NOT FOR PUBLICATION

The VE was not asked whether there was work Rosario could perform if her ability to perform simple tasks was limited to two-thirds of a workday or to two-hour segments in a workday. Therefore, there is not substantial evidence in the record supporting the ALJ's finding at step five of the sequential evaluation that Rosario could perform the jobs identified by the VE if she could perform simple tasks only two-thirds of the workday or in two-hour segments during the workday. Accordingly, I recommend that the Court find that the first assignment of error is well taken and that this error requires that the final decision of the Commissioner be reversed.

*Credibility.*

In the second assignment of error, Rosario contends that the ALJ improperly found her testimony about her limitations not to be entirely credible by relying selectively on evidence in the record. Specifically, she contends that Dr. Marrero's opinion supported her testimony.

If an ALJ decides not to credit a claimant's testimony as to pain and other subjective symptoms, he must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam). In this case, the ALJ cited to specific evidence in the record to support his credibility finding. R. 28. It is not evident from counsel for Rosario's argument how the failure to give weight to Dr. Marrero's opinion undermines the ALJ's credibility determination. Nevertheless, because I recommend that the Court reverse the final decision of the Commissioner, the Commissioner will have an opportunity to reassess Rosario's credibility on remand.

## RECOMMENDATION.

For the reasons stated above, it is **RESPECTFULLY RECOMMENDED** that the final decision of the Commissioner be **REVERSED** pursuant to sentence four of § 405(g) and that the

case be **REMANDED** for further proceedings.   I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on the Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

**RESPECTFULLY RECOMMENDED** this 28th day of October 2016.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE